COMMERCIAL NATIONAL BANK OF COUNCIL BLUFFS, IOWA,
v. A. T. FLICKINGER, Appellant.

**Negotiable instruments:** COMPROMISE AND SETTLEMENT: EVIDENCE.
1 In this suit upon promissory notes the evidence is held insufficient to show that the same were included in a prior settlement between one of the joint makers and the payee.

**Same:** EXCLUSION OF EVIDENCE: PREJUDICE. Where a party claimed
2 payment of a note by another party jointly liable, a letter written by such party to his attorney in relation to a settlement between himself and the holder of the note and dictated in the presence

of plaintiff, was not admissible against it, in the absence of
any showing that it ·was advised of the contents of the letter;
and in this instance exclusion of the letter was not prejudicial,
as it was only material on an issue which the court might
properly have withdrawn from the jury.

Same:·  ADMISSION OF EVIDENCE.  The admission of plaintiff's books
3   of account was harmless to defendant, where his own witness
admitted the facts sought to be proved thereby.

Same:  EXCLUSION OF EVIDENCE: PREJUDICE.  The exclusion of an
4   exhibit showing a continuation of plaintiff's claim against a third
party was not prejudicial, where such party admitted his lia-
bility to the extent shown in the exhibit.

New trial:  NEWLY DISCOVERED EVIDENCE.  Alleged newly discovered
5   evidence having no probative value is not ground for a new
trial.

*Appeal from Pottawatlamie District Court.*—HON. A. B.
.THORNELL, Judge.

SATURDAY, APRIL 6, 1912.

SUIT on two promissory notes.  Trial to a jury, and
verdict and judgment for the plaintiff.  The defendant
appeals.—*Affirmed.*

*I. N. Flickinger* and *W. R. Green,* for appellant.

*H. L. Robertson,* for appellee.

SHERWIN, J.—In March, 1907, this defendant, A. T.
Flickinger, J. F. Record, Royal Hudspeth and C. E. Price,
the cashier of the plaintiff bank, bought a large tract of
land in Nebraska for $6,000 in cash.  Record had the
money to pay for his one-fourth interest in the land, but
defendant, Hudspeth and Price borrowed $4,500 of the
plaintiff bank to pay their part of the purchase price of
.said land, giving the plaintiff their joint promissory note
therefor due six months from date. ` The title to the land

was taken in the name of Record, who held it in trust for his copurchasers. The note given to the bank by Flickinger, Hudspeth and Price, was renewed when it became due and several times thereafter. In January, 1908, a written agreement was entered into by Price, Hudspeth and Flickinger, whereby Price was relieved from again signing said note, but acknowledged that he was liable to the bank for one-third thereof. The note was then again renewed by Hudspeth and Flickinger, and subsequently Hudspeth's name was dropped from the note, because of his other obligations to the plaintiff and to meet the requirements of the bank examiner, and Flickinger alone gave his note for $4,500. Flickinger paid the interest on $3,000 thereof, either in cash or by separate note, and finally alone gave the note in suit on the 18th of January, 1909. Price paid the interest on the remaining $1,500, and just before this suit was brought he credited the note with $1,500, the amount for which he was liable on the land deal under their original agreement and the written agreement of January 8, 1908. The original controversy between Price and the defendant was whether defendant was liable to the bank on the note for $3,000 or for only $1,500, which, with the interest thereon, defendant was at all times ready to pay. This suit was the result of the controversy.

The only defense interposed by the defendant was that $1,500 of the amount represented by the note had been paid to the bank by Hudspeth, through one Pierce, in May, 1907, and that in October, 1909, a full settlement between the plaintiff bank and Hudspeth was had in which the bank received satisfaction for said sum of $1,500. A note of $150, given by Hudspeth and this defendant, was also sued on herein, and the defendant also claims that it was satisfied in the settlement of October, 1909. The alleged payment of the $1,500, through Pierce, grew out of the following transaction: Hudspeth and Pierce settled a lawsuit that had been pending between them, and in that

settlement Pierce became the owner of Hudspeth's share in the Nebraska land, and Pierce was to pay the plaintiff bank $9,600 in cash or notes for Hudspeth's benefit, and which Hudspeth directed the bank, in writing, to apply on his notes. Before Hudspeth closed this settlement with Pierce, he went to the plaintiff bank and gave it three notes of $3,200 each, which sum, with the exception of about $100 which was paid to him in cash, represented renewals of notes then held by the bank. When the settlement was finally completed, Pierce gave the bank notes for $9,600, which the bank applied as payment of the three $3,200 notes but recently given it by Hudspeth, and surrendered said three notes, canceled, to Hudspeth, who has ever since retained them. The trial court submitted to the jury the question whether there had been a payment to the bank of $1,500 on the defendant's note of $4,500 at the time of the Pierce transaction, and the jury found against the appellant's contention. The court withdrew from the jury the question as to the satisfaction of said $1,500 in the settlement of October, 1909.

In this settlement, Hudspeth gave the bank his note for $13,853.12, which covered certain notes given by Hudspeth to the bank, with interest thereon, and certain indebtedness of Hudspeth to Pierce and others, a list of which was present and furnished the basis of such settlement. The $4,500 note in suit was not included in the list of notes, nor in the other indebtedness that was considered in the settlement. After the settlement had been made and the new note given by Hudspeth, the following receipt was signd by Price for the bank: "Received of Royal Hudspeth note of $13,853.12, in full payment of all claims, by account, or assignments of any kind, nature or description, to this date." We think the court rightly withdrew from the jury the claim of payment in the October settlement. It is clear that the parties did not intend to include this

1. NEGOTIABLE INTRUMENTS: compromise and settlement: evidence.

note herein.    It is not signed by Hudspeth, and he had at that time sold his interest in the Nebraska land, and Mr. Flickinger had become the owner thereof.    The note was not produced at the time of settlement or thereafter; nor was it, so far as we are able to determine from the record, the subject of conversation between the bank, or its representative, and Hudspeth at that time.    Neither does it appear that the defendant or Hudspeth afterwards claimed that the note was paid in said settlement until this suit was brought.    If it were not for the receipt that we have set out, there would be no foundation for the claim that there was payment or satisfaction thereof in that settlement; for every other fact and circumstance negatives such fact, and the receipt itself is not, in fact, inconsistent with the conclusion that we reach.    It only purports to cover "claims by account or assignments."    The note in suit was not of either class, and was not, in fact, enforceable against Hudspeth.    The $150 note in suit here was not included in items entering into the settlement; nor was it referred to or produced at that time, or afterwards demanded by Hudspeth or the defendant.    The question whether it was, in fact, included in the settlement, because it was made by Hudspeth and the defendant, we presume, was submitted to the jury, however, and it found against the defendant's contention.

In this connection, we may consider the appellant's complaint because it was not permitted to introduce in evidence a letter, written for Mr. Hudspeth in the office

2. Same: exclusion of evidence: prejudice.

of Mr. Flickinger, to Hudspeth's attorneys on the day of the settlement.    It recited the substance of the settlement, gave the attorneys directions as to the answer they should file in the suit of the bank against him, and further "to make such receipts as will show that I am not further indebted to said bank, or to C. E. Price, . . . and that all transactions between the said bank, Mr. C. E. Price and myself

are closed." While there is evidence tending to show that some of the bank's representatives were present when this letter was dictated to the stenographer, it is not shown that they paid any attention thereto, or knew its contents. It was a private letter of Hudspeth's to his counsel, and one that the other parties would not be likely to listen to, and, in the absence of a showing that they knew its contents, it clearly would not be competent. It would only be material, in any event, on the question of the payment at that time of the $150 note, and we think there was no prejudice in excluding it, because of the fact that the court might well have withdrawn the question from the jury on the facts connected with the settlement, which we have already given. And, furthermore, the substance of the letter was already before the jury in the evidence touching the settlement and in the receipt given by the bank.

A great many errors on the admission and rejection of testimony are assigned, so many, in fact, that it is impossible, as well as unnecessary, to notice them in detail. Most of the complaints are of no merit, because the rulings relate to the exclusion of matters entirely foreign to the issues presented, which were that the two notes were paid. We find nothing of such a prejudicial character in the rulings generally as to require a reversal, and we shall only discuss a few matters, in addition to the ruling already referred to, which seem to be of enough importance to demand specific treatment.

Books of the bank, called "counter books," were introduced. Of this complaint is made, because they showed that Hudspeth had given the bank the three $3,200 notes, hereinbefore referred to, in anticipation of his settlement with Pierce. Whether the ruling was right or wrong can make no difference to the defendant, because his witness, Hudspeth, admitted that he had made the notes, and that the bank had surrendered them to him upon receipt of Pierce's

3. Same: admission of evidence.

notes, amounting to $9,600. It is also said that it was error to admit Book Exhibits 41 and 42. We are not advised, however, as to what books they were, nor as to the prejudice occasioned by their introduction. We conclude, therefore, that the appellant does not rely upon the alleged error.

Exhibit 6 was the agreement relating to the dropping of Price's name from the $4,500 note in suit, to which we have already referred, and the appellant contends that it should have been received, because it "shows a continuation of the claim of the bank against Price and Hudspeth and his joint liability thereon." If it is meant by this that it shows Price's liability on the note, its introduction was not necessary, because Price at all times admitted his liability to the extent of $1,500, and, in fact, credited the note with that amount before suit, and that is all that is shown by the exhibit. Moreover, plaintiff was not a party to this agreement; nor was any defense based thereon.

4. Same: exclusion of evidence: prejudice.

Complaint is made because the court held during the trial, and so instructed the jury, that Hudspeth was the only one who had any right to direct the application of the Pierce payment of $9,600. This holding was in accord with the rule, and was right under the issues and the evidence.

Hudspeth claimed that he had orally directed the bank to apply a part of such payment ($1,500) to the $4,500 note in suit, and this was flatly denied by Price. The court told the jury that there was no evidence that the plaintiff bank had a lien on the Nebraska land for the payment of the indebtedness represented by the $4,500 note, and that the matter should be given no consideration. The record fully warranted this instruction. The court's instruction that there was no tender becomes of no importance in view of an affirmance of the judgment.

Appellant asked a new trial, on the ground that he

had discovered that on the 27th of May, 1908, the plaintiff, through its cashier, Price, had collected . $52.50 · of Hudspeth as interest on the syndicate note. There is no merit in this claim. Hudspeth's name was on the note in January, 1908, when the agreement was made to drop Price's name therefrom, and how much longer the note bore the signature of Hudspeth does not appear. It may fairly be assumed, however, that he was still on the note when this interest was collected. Hudspeth, at one time, testified that the $150 note in suit had been merged in a note of $2,400; but at another time he testified that the $150 note had not been paid. This was but a detail of the trial, and the court was not bound to specifically call the attention of the jury to the matter; nor was the jury bound to find that the $150 note had been satisfied· by a merger in another note.

5. NEW TRIAL: newly discovered evidence.

Appellant submitted a motion to strike appellee's additional abstract, because it was unnecessary and largely a repetition of the appellant's abstract. The motion is overruled, but one-half of the cost of printing the same will be taxed to the plaintiff.

The judgment is *affirmed*.